UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JUAN NUNEZ,

|  |  |  |
|---|---|---|
|  | Plaintiff, | **REPORT** |
|  |  | **and** |
| v. |  | **RECOMMENDATION** |

VICTOR HERBERT, Superintendent,                    03-CV-0093A(F)
I.R.C. PATRICIA PRIESTLY, and
CAPTAIN BRADT,

                                        Defendants.

---

APPEARANCES:        JUAN NUNEZ, *Pro Se*
                    84-B-0177
                    Attica Correctional Facility
                    P.O. Box 149
                    Attica, New York 14011-0149

                    ANDREW M. CUOMO
                    Attorney General, State of New York
                    Attorney for Defendants
                    DARREN LONGO
                    Assistant Attorney General, of Counsel
                    107 Delaware Avenue
                    4th Floor
                    Buffalo, New York 14202

## JURISDICTION

This case was referred to the undersigned by Honorable Richard J. Arcara on

November 15, 2005.  The matter is presently before the court on Defendants' motion to

dismiss for failure to state a claim or for judgment on the pleadings (Doc. No. 10), filed

October 12, 2004.

## BACKGROUND

Plaintiff Juan Nunez ("Plaintiff") commenced this civil rights action *pro se*, while incarcerated at Attica Correctional Facility ("Attica" or "the correctional facility"), alleging Defendants Attica Superintendent Victor Herbert ("Herbert"), Attica Inmate Records Coordinator Patricia Priestly ("Priestly"), and Attica Corrections Captain Bradt ("Bradt") violated Plaintiff's Fourteenth Amendment rights to due process and equal protection by failing to correct an administrative error that resulted in Plaintiff's erroneous confinement in keeplock at Attica for 113 days. To date, service has not been effected as to Defendants Herbert and Priestly. Defendant Bradt, who was served on May 5, 2003, filed an answer on June 6, 2003 (Doc. No. 8).

On October 12, 2004, Defendants moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and 12(c) for judgment on the pleadings ("Defendants' Motion"). The motion is support by Defendant's Memorandum of Law in Support of Motion to Dismiss (Doc. No. 11) ("Defendants' Memorandum"). On December 17, 2004, Plaintiff filed a Reply to Defendants' Motion to Dismiss (Doc. No. 13) ("Plaintiff's Response"). Oral argument was deemed unnecessary.

Based on the following, Defendants' motion to dismiss should be GRANTED.

## FACTS[1]

As of June 20, 2001, Plaintiff, who was then confined to the Special Housing Unit ("SHU") at Southport Correctional Facility ("Southport") after having been found guilty

---

[1] Taken from the pleadings and motion papers filed in this action.

on 11 Tier Two and Three misbehavior reports in 2000, was advised by the Inmate

Disciplinary Review Committee that Plaintiff's SHU release date had been changed to

September 19, 2001, and that a transfer request on Plaintiff's behalf would be

submitted.[2]  Plaintiff does not dispute that he was released from SHU by September 19,

2001; rather, Plaintiff alleges that upon his transfer to Attica,[3] "he was immediately

placed under keeplock status," Complaint ¶ 8, where he remained until his release on

January 10, 2002.[4]

According to Defendants, Plaintiff's confinement under <u>keeplock</u> status beyond

his <u>SHU</u> release date of September 19, 2001, resulted from an administrative oversight

which erroneously indicated that prior to Plaintiff's transfer to Attica, Plaintiff had been

subjected to a "cube restriction" at a medium security facility.  Because cube restriction

was possible only in facilities providing dormitory style housing, which is not available at

maximum security facilities such as Attica, it was decided that Plaintiff, upon

transferring to Attica, would be placed in keeplock confinement.  Upon arriving at Attica,

Plaintiff protested his keeplock placement, but Defendants continued to deny any error

---

[2] Nothing in the record specified Plaintiff's SHU release date before it was changed to September 19, 2001, nor whether the changed release date lengthened or shortened Plaintiff's SHU confinement.

[3] Plaintiff alleges that he was transferred to Attica "within a few days of the receipt of said memo [advising that Plaintiff's SHU release date was changed to September 19, 2001," Complaint ¶ 7, but does not otherwise specify the date of Plaintiff's transfer to Attica.

[4] Because is it not clear from the papers when Plaintiff was transferred to Attica and "immediately placed under keeplock status," Complaint ¶ 8, it is not possible to determine the number of days Plaintiff was confined to keeplock.  Defendants assert that Plaintiff could not have been confined to keeplock for more than 113 days, assuming that Plaintiff was released from SHU on September 19, 2001, and from keeplock on January 10, 2002.  Defendants' Memorandum at 4.  Plaintiff's assertion, Complaint ¶¶ 7-8, that he was transferred to Attica "within a few days of the receipt of said memo" on June 20, 2001, however, suggests that Plaintiff was confined under keeplock for longer than 113 days.  Nevertheless, as the precise number of days of Plaintiff's keeplock confinement is not relevant to the action at this stage of the proceedings, the court will not further consider the issue.

until January 8, 2002, when Defendant Priestly, after consulting with Attica's disciplinary office which made further inquiry in Albany, admitted an error had occurred in placing Plaintiff in keeplock confinement upon his arrival at Attica.  Plaintiff was released from keeplock confinement on January 10, 2002.

Plaintiff alleges that on January 17, 2002, after being released from keeplock confinement, Plaintiff filed an inmate grievance complaining that he had been unlawfully confined in keeplock and that, despite repeated complaints to unidentified corrections officials, nothing was done to remedy the situation.  Complaint ¶ 13.  On February 6, 2002, a hearing was conducted before the Inmate Grievance Resolution Committee ("IRGC"), following which the IGRC found that because Plaintiff had a "cube restriction" when previously incarcerated at a medium security prison, and because such "cube restriction" was not possible at Attica, upon Plaintiff's transfer to Attica, the cube restriction was converted to keeplock confinement.  Complaint ¶ 14.  The IGRC further found the conversion of Plaintiff's status from cube restriction to keeplock confinement was "excessive."  *Id*.  Plaintiff appealed the IGRC's decision to Defendant Herbert who, on February 9, 2002, responded that the conversion of Plaintiff's cube restriction at the medium security facility to keeplock confinement at Attica was proper. *Id*.

On February 13, 2002, Plaintiff appealed Defendant Herbert's response to the Central Office Review Committee ("CORC") who, on April 3, 2002, found the conversion of Plaintiff's cube restriction to keeplock confinement was incorrect, "note[d] that the facility administration has been advised of this procedure and will credit [Plaintiff's] account, at the unemployed rate, for the days spent keeplocked.  No malice is noted by staff." *Id*. ¶ 15.  According to Plaintiff, Defendants intentionally disregarded Plaintiff's

4

repeated complaints that at no time prior to his placement in keeplock at Attica had he ever been housed or transferred from any medium security facility.  Complaint ¶ 16.

## DISCUSSION

Defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint for failure to state a claim or, alternatively, pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings, asserting that the standard for obtaining either relief is the same.  Defendants' Memorandum at 1-2.  Upon a motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c)), the court must follow the same standards applicable to a motion under Rule 12(b)(6).  *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1993),  *cert. denied*, 513 U.S. 816 (1994).  On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Village Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995), *cert. denied*, 519 U.S. 808 (1996).  The court is required to read the complaint with great generosity on a motion to dismiss.  *Yoder v. Orthomolecular Nutrition Institute*, 751 F.2d 555, 558 (2d Cir. 1985).  The complaint will be dismissed only if "it appears beyond doubt" that the plaintiff can prove no set of facts which would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985).  "This rule applies with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."  *Chance v. Armstrong*, 143 F.3d 698, 701 (2d

Cir. 1998).  Furthermore, the pleadings of a *pro se* plaintiff are to be liberally construed.

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (allegations of complaint drafted by *pro se*

plaintiff held to less stringent standards than formal pleadings drafted by attorneys).

Here, Plaintiff alleges Defendants violated his civil rights under 42 U.S.C. § 1983.

Pursuant to § 1983, an individual may seek damages against any person who, under

color of state law, subjects such individual to the deprivation of any rights, privileges, or

immunities protected by the Constitution or laws of the United States.  42 U.S.C. §

1983.  However, "Section 1983 'is not itself a source of a substantive rights,' but merely

provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v.*

*Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3

(1979)).  Thus, "[t]he first step in any such claim is to identify the specific constitutional

right allegedly infringed."  *Id.*  (citing *Graham v. Connor*, 490 U.S. 386, 394, (1989); and

*Baker*, *supra*, at 140).

Plaintiff asserts three claims for relief, each of which essentially alleges that

Defendants' failure to act to remedy the administrative error that cause Plaintiff to be

confined on keeplock status deprived Plaintiff of his Fourteenth Amendment rights to

due process and equal protection.  Complaint ¶¶ 17-25.  Defendants proffer three

arguments in support of their request to dismiss such claims, including (1) Plaintiff's

confinement to keeplock does not impinge a protected liberty interest, Defendants'

Memorandum at 4-5; (2) Plaintiff has failed to allege the elements of an equal

protection claim, *id.* at 5-6; (3) Plaintiff has failed to allege the requisite personal

involvement as to Defendant Priestly, *id.* at 6-7; (4) Plaintiff has failed to allege the

requisite personal involvement as to Defendant Herbert, *id.* at 7-9; and (5) Defendants

are immune from suit in their official capacities, *id.* at 9-10.

Plaintiff, in opposing Defendants' Motion, maintains that his First Claim for Relief is for denial of due process, his Second Claim for Relief is for unlawful confinement, and his third claim for relief is for failure to train and supervise correctional facility employees.  Plaintiff's Response ¶ 1.  Plaintiff further advises that he is withdrawing his equal protection claim because he is unable to prove Defendants' intent.  Plaintiff's Response ¶ 6.  As such, the court will not further consider Plaintiff's equal protection claim.

Preliminarily, although the facts imply that Plaintiff's erroneous confinement in keeplock was the result of some administrative oversight, Plaintiff alleges that Defendants' conduct that caused Plaintiff to be held in keeplock was intentional, reckless and undertaken with deliberate indifference and callous disregard to Plaintiff's due process rights.  Complaint ¶¶ 19, 22 and 25.  "[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of injury to life, liberty, or property."  *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (holding no constitutional due process claim was stated by allegation that inmate plaintiff tripped over a pillow negligently left on a prison stairway) (italics in original).  *Compare Logan v. Zimmerman Brush Company*, 455 U.S. 422, 434, 437 (1982) (holding Illinois Fair Employment Practices Committee's inadvertent error in failing to hold required fact finding hearing within statutory 120-day period, resulting in dismissal of plaintiff's claim for lack of jurisdiction, deprived plaintiff of Fourteenth Amendment due process as the plaintiff was denied "'an *opportunity* . . . granted at a meaningful time and in a meaningful manner' . . . 'for [a] hearing appropriate to the nature of the case.'" (citations

omitted) (italics in original)).  Rather, "the primary purpose of allowing damages for constitutional violations is to prevent 'abuse of power'" by an official.  *Castro v. United States*, 34 F.3d 106, 113 (2d Cir. 1994) (citing *Daniels*, *supra*, 332).  To hold that an injury caused by a negligent act constitutes a deprivation "within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law."  *Id*.  As such, the court will not consider Plaintiff's allegations insofar as they can be construed as challenging some negligent action by Defendants.

Further, although Plaintiff claims for monetary damages are asserted against Defendants only in their official capacities, such claims can lie against Defendants only in their individual capacities.  *Cruz v. Gomez*, 202 F.3d 593, 595 n. 2 (2d Cir. 2000) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Dube v. State Univ. of New York*, 900 F.2d 587, 594-95 (2d Cir. 1990)). As such, Defendants are immune from monetary damages insofar as they are sued in their official capacities from § 1983 actions whether based on state law, *Allen v. Cuomo*, 100 F.3d 253, 260 (2d Cir. 1996), or federal law, *Mathie v. Fries*, 121 F.3d 808, 817-18 (2d Cir. 1997), all claims for damages should be dismissed against Defendants in their official capacities. However, given Plaintiff's *pro se* status, *Haines*, *supra*, at 520, the court will treat Plaintiff's claims for money damages to be alleged against Defendants in their individual capacities.

To state a claim for denial of procedural due process, a prison inmate "must allege that he possessed a protected liberty interest, and was not afforded the requisite process before being deprived of that liberty interest."  *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (citing *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996)).  A

two-prong test is used to determine the existence of a protected liberty interest. *Cruz*, *supra*, at 597 (citing *Arce v. Walker*, 139 F.3d 329, 334 (2d Cir. 1998)). "First, the prisoner must establish that the confinement or restraint complained of creates an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" *Cruz*, *supra* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "Second, the prisoner must establish that 'the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint.'" *Cruz*, *supra* (quoting *Frazier v. Coughin*, 81 F.3d 313, 317 (2d Cir. 1996)).

      *Cruz*, *supra*, is similar to the instant case insofar as the inmate plaintiff claimed a denial of due process under § 1983 based on an alleged unjustified 18-month extension of the plaintiff's detention in punitive SHU without providing the plaintiff an opportunity to challenge the extension of such detention. *Cruz*, *supra*, at 595. The plaintiff had particularly challenged a closed-door meeting at which the status of his inmate classification was reviewed by the relevant correctional facility's inmate classification review committee ("the committee"), where it was determined that the plaintiff remained ineligible to be reintegrated into the general prison population. *Id*. Although in *Cruz* the plaintiff presented his claim as a violation of the Fifth Amendment's Double Jeopardy Clause, the Second Circuit found that a liberal construction of the complaint showed the plaintiff alleged a denial of due process. *Id*. at 596-97. Significantly, although the plaintiff had alleged that he was "not afford[ed] . . . any due process guaranteed by law" when the committee decided not to permit the plaintiff to be reintegrated into the general prison population, resulting in the plaintiff's continued confinement in SHU for an additional 18 months, the Second Circuit found

such allegations conclusory and insufficient to state a due process violation. *Id*. at 597-98.  Similarly, in the instant case, even affording the most liberal construction of the Complaint, consonant with Plaintiff's *pro se* status, *Haines*, *supra*, at 520, Plaintiff's conclusory assertions of a due process violation are insufficient because Plaintiff has failed to allege facts establishing either prong of a valid due process claim.

Specifically, the Complaint is devoid of any allegations concerning the conditions of Plaintiff's confinement while on keeplock status.  *See Cruz*, *supra*, at 597 (quoting *Arce*, *supra*, at 335 ("[T]he *degree* and duration of an inmate's restraint are the key considerations to determine the existence of a state-created liberty interest.") (italics in original)).  Nor has Plaintiff alleged that New York has created any liberty interest in remaining free from keeplock confinement while incarcerated in a New York Correctional Facility.  *Cruz*, *supra*, at 597 (citing *Frazier*, *supra*, at 317).  Simply put, Plaintiff "cannot recover under § 1983 without alleging that a protected liberty interest has been violated," *Cruz*, *supra*, at 597, and Defendants' motion to dismiss and for judgment on the pleadings should be GRANTED.

The action should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c) as against Defendants Herbert and Priestly for lack of personal involvement. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (to establish liability under § 1983, plaintiff must show defendant was personally involved in the alleged constitutional violation).  Plaintiff's only specific allegation as to Defendant Herbert is that on February 9, 2002, Herbert erroneously found, in connection with Plaintiff's inmate grievance, filed January 17, 2002, seven days after Plaintiff was released from keeplock confinement, that the conversion of Plaintiff's cube restriction to keeplock

confinement was proper.  Complaint ¶ 14.  Such allegation, even if correct, fails to allege that Defendant Herbert was personally involved in the decision to place or keep Plaintiff is keeplock confinement upon Plaintiff's arrival at Attica.  Nor does the fact of Herbert's position as Attica's Superintendent, without more, render Herbert liable for damages for Plaintiff's erroneous confinement in keeplock.  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.) ("The rule in this circuit is that when monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required.").

A defendant occupying a supervisory position may be found personally involved in the deprivation of a plaintiff's constitutionally protected liberty interests in several ways, including by (1) directly participating in the infraction; (2) failing to remedy the wrong after learning of the violation through a report or appeal; (3) creating a policy or custom under which unconstitutional practices occur, or allowing such policy or custom to continue; (4) acting with gross negligence in managing subordinates who caused the unlawful condition or event; of (5) demonstrating "gross negligence" or "deliberate indifference" to the inmate's constitutional rights by failing to act on information indicating that unconstitutional practices are taking place.  *Wright*, *supra*, at 501 (citing cases).  Significantly, Plaintiff does not allege that he ever made such complaint known to Herbert prior to being released from keeplock confinement on January 10, 2002 and, thus, it is not possible, based on these pleadings, to find that Herbert was aware of, yet ignored or failed to properly investigate, or allowed any unconstitutional practice or custom to continue.  Plaintiff's failure to sufficiently allege personal involvement at to

Defendant Herbert also requires dismissal of the action as to Herbert.

As for the claims against Defendant Priestly, Attica's Inmate Records Coordinator, Plaintiff fails to allege that Priestly had any involvement with the decision to place Plaintiff in keeplock or to continue such confinement.  Rather, Plaintiff alleges only that, acting upon the advice of an unidentified person, Plaintiff complained to Priestly[5] that his confinement in keeplock was erroneous, and that on December 31, 2001, Priestly advised Plaintiff in a memorandum that Attica's computer records indicated Plaintiff was to be restricted to "bed/rm/dorm from 9/19/01 to 3/18/02." Complaint ¶ 11.[6]  Priestly further explained that she did not know "how this would work at a facility like Attica which has no dorms/rms.  Perhaps you should ask the area Sergeant.  I am attaching a printout of your current disciplinary sanctions to show him/her."  *Id*.

There is no indication whether Plaintiff ever followed Priestly's advice to ask the "area Sergeant" to investigate the matter.  More significantly, Plaintiff's allegation, which Defendants' do not challenge, that on January 8, 2002, Plaintiff received a second communication from Priestly[7] advising that Priestly had consulted with Attica's "disciplinary office, "who contacted Mr. Selsky's Office in Albany," and determined that

---

[5] The record does not indicate the exact date or method by which Plaintiff made such complaint to Priestly, although that the Complaint otherwise recites the facts in chronological order strongly suggests such complaint was made between December 29 and December 31, 2001.

[6] Plaintiff did not attach a copy of Priestly's December 31, 2001 Memorandum from which Plaintiff quotes in the Complaint.  Defendants, however, do not challenge the accuracy of the quoted statements Plaintiff attributes to Priestly's December 31, 2001 Memorandum.

[7] Although not referred to as such in the Complaint, the allegations suggest Priestly's second communication to Plaintiff was unsolicited.

Plaintiff had been erroneously placed in keeplock, Complaint ¶ 12, points away from finding that Defendant Priestly was acted with "gross negligence" in regard to, was "deliberately indifferent" to, or in any other way ignored Plaintiff's complaint about his keeplock status.

Plaintiff thus has failed to sufficiently allege Priestly was personally involved in denying Plaintiff due process in connection with his erroneous confinement in keeplock. As such, the action should be dismissed as against Priestly for lack of personal involvement.

Although it is recommended that the action be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c), the possibility that Plaintiff could amend the Complaint to state a valid Fourteenth Amendment due process claim cannot be disregarded.  The Second Circuit has instructed that "a *pro se* plaintiff who is proceeding *in forma pauperis* should be afforded the same opportunity as a *pro se* fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."  *Cruz*, *supra*, at 597.  Here, because nothing in the record provides any description of the conditions to which Plaintiff was subjected while confined on keeplock status, it is impossible to say that such conditions did not pose an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  *Sandin*, *supra*, at 484.  Nor is it clear from the record whether New York has granted its inmates, whether by regulation or statute, a protected liberty interest in remaining free from keeplock confinement.  It is also possible that, after discovery, Plaintiff may be able to allege additional facts sufficient to

13

subject Herbert or Priestly to liability, or to identify and serve, subject to Fed. R. Civ. P. 15(c), any other person who was in fact responsible for Plaintiff's extended keeplock status.  As such, it is possible that Plaintiff may, in an amended complaint, allege sufficient facts to state a Fourteenth Amendment due process claim.

## **CONCLUSION**

Based on the foregoing, Defendants' motion to dismiss (Doc. No. 10) should be GRANTED.   The Complaint should be dismissed without prejudice and with leave to file an amended complaint.  Plaintiff should be given a deadline by which to file any amended complaint.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        February <u>21</u>, 2007
              Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      February 21, 2007
            Buffalo, New York